■    In the Matter of the Estate of ELLEN McGARRITY, Also Known as HELEN McGARRITY, Deceased. JOHN J. BREEN, as Public Administrator, Petitioner; SERENA J. LARGENT, Appellant; LOUIS J. LEFKOWITZ, as Attorney-General of the State of New York et al., Respondents.—In a proceeding to settle the account rendered by the administrator of the estate of Ellen McGarrity, also known as Helen McGarrity, objectant Serena J. Largent, a first cousin of the deceased, appeals from so much of a decree of the Surrogate's Court, Westchester County, dated November 30, 1977, as ordered that the administrator pay the balance of the estate ($21,479.54) to the Comptroller of the State of New York to be held for the benefit of the persons who might be entitled thereto, in accordance with the provisions of SCPA 2222. Decree reversed insofar as appealed from, on the law, without costs or disbursements, by deleting subdivision 2 of the third decretal paragraph thereof and substituting therefor a provision directing that the balance of the estate be paid equally to the appellant and her sister Eleanor Dagenais as the sole distributees. In our opinion it was established by a preponderance of the credible evidence that appellant and her sister, Eleanor Dagenais, were the sole distributees of the decedent (see *Matter of Johnson v La Sala Mason Corp.,* 19 AD2d 925, mot for lv to app den 13 NY2d 601). We note that in addition to the testimony of appellant and her husband, there was also presented the testimony of decedent's long-time friend, Margaret Fitzgerald, a disinterested witness, and decedent's former tenant, James Leschen, also a disinterested witness. Under the circumstances of this case we find that appellant's attorney made a sufficiently diligent search to warrant the application of SCPA 2225 in appellant's favor. The estate is small and the status of appellant and her sister has been established. "Distribution of the estate should not be withheld from them merely because of the remote possibility, finding no support in the record, that there may be unknown distributees" *(Matter of Deflacieuz,* 87

Misc 2d 845, 847; *Matter of Russo,* 91 Misc 2d 984). Damiani, J. P., Titone and O'Connor, JJ., concur.

Martuscello, J., dissents and votes to affirm the decree insofar as appealed from, with the following memorandum: I find no basis for disturbing the findings and conclusions of the Surrogate. The only material competent evidence with respect to the paternal side of the family was the narration of four witnesses as to what the decedent had told them. One of the witnesses, however, was Serena J. Largent, the objectant. Another was her husband, William Henry Largent. They had an obvious financial stake in the outcome of the proceedings. Further, the testimony of all four of these "pedigree witnesses"—including the two disinterested witnesses, Margaret Fitzgerald and James Leschen—was necessarily limited by the information possessed by the decedent. That information appears to have been meager and of extremely weak character because: (1) As reported by William Henry Largent, decedent had stated that her father "left when she was young and he died on his way to England * * * on a boat" and (2) as testified by decedent's long-time friend, Margaret Fitzgerald: "Q. Were her [decedent] parents deceased at the time you knew her? A. Her mother was deceased, yes. Q. What about her father? A. Well, they didn't know much about the father. He went—he worked on a ship or something, and he went away, *and they never bothered with each other."* (Emphasis supplied.) Thus it is quite clear that decedent knew very little about her father. This partially explains why the objectant's attorney's investigation, by letters to the general registrar's office in London, England, had borne no fruit by the close of the long drawn-out trial and was insufficient to warrant invocation of SCPA 2225. The investigation was necessarily limited by the meager pedigree evidence from which to launch a search. The special facts at bar thus dictated that an on-site (England) investigation be made with respect to any church and civil records and marine disaster rolls that might shed information as to when and where decedent's father died, whether he had any brothers or sisters, whether the brothers and sisters, if any, left issue and whether decedent's father ever remarried. That such an on-site investigation might have been fruitful and might have made up for the deficiencies in the meager declarations purportedly made by decedent is indicated by the information given to the court by the objectant's attorney with respect to two documents which he described to the court but which were not admitted into evidence, namely: (1) The purported marriage certificate of decedent's parents, as to which the objectant's counsel stated: "On the basis of that marriage certificate, I learned that the decedent's father was born in 1865; that his father's name was James; and that he married the decedent's mother on April 22, 1889" and (2) Yonkers Savings Bank records of decedent as to which the objectant's counsel stated: "I went to the Yonkers Savings Bank where the decedent had her savings account, and on the records pertaining to the account, were the names of the decedent's parents: *John McGarrity* and Ellen McQueen McGarrity." (Emphasis supplied.) Under all of these circumstances it is manifest (1) that the Surrogate's decision is amply supported by the competent evidence in this record, and (2) that he did not abuse his discretion in refusing to apply SCPA 2225 for the objectant's benefit.